## DECHERD *v.* DREWRY.

Opinion delivered December 18, 1897.

BOND—APPROVAL BY CITY COUNCIL—PAROL EVIDENCE.—Where a city ordinance authorized a money bond payable to the city to be taken "to be approved by the city council," the city, in suing on such a bond, may show by parol evidence that the bond was delivered to and approved by the council, though such approval was not indorsed on the bond, nor made part of the minutes of the proceedings of such council. (Page 602.)

Appeal from Crawford Circuit Court.

JEPHTHA H. EVANS, Judge.

*E. B. Pierce*, for appellant.

*S. A. Miller*, City Attorney of counsel.

The liability of the sureties on a dramshop keeper's bond is complete the instant he receives his license and begins to derive the benefit therefrom. Approval of such bond is not mandatory. 2 Ark. 79.

*Miles & Miles*, for appellees.

Acceptance of the bond is necessary to its validity. Murfree, Official Bonds, §§ 46–48; 79 Cal. 84; 47 Mich. 586. The council had no right to delegate its power to accept or

approve the bond.    47 Mich. 586; 22 S. W. 522; Dillon, Mun. Corp. § 96; Cooley, Const. Lim. 194, 195, 204, 205.    The bond was never approved in its amended shape.    40 S. W. 87. The requirement, by a city of the second class, of the payment of more than $25 as a penalty for the violation of such ordinance is *ultra vires* and void.    27 Ark. 467; 31 Ark. 462; 41 Ark. 456; Mansf. Dig., § 766.

BUNN, C. J.    This is an action by the mayor and alderman of the city of Van Buren against A. W. Winford, as principal, and Josiah Stahl, S. A. Wright and M. W. Drewry, as sureties, on a dramshop keeper's bond of $1,000, provided by an ordinance of said city, to collect the balance due of the license tax for the year 1895, also provided by ordinance of said city.    Judgment for the defendants, and plaintiffs appeal to this court.

The ordinances of the city of Van Buren, under which this controversy arose, provided that:

"Sec.    40.    It shall be unlawful for any person to keep a saloon, dramshop, or tippling house, or to sell, barter, or in any manner dispose of or transfer any ardent, spirituous, vinous, malt or fermented liquor or beverage, in less quantities than one quart, within the limits of this town, unless said person shall have paid into the treasury of this town the amount hereinafter specified as a license for retailing such liquor or beverage, and shall have complied with all of the requirements hereinafter contained.

"Sec.    41.    Any person wishing to engage in the business specified in section 40 of this ordinance shall first present a petition to the council of said town, setting forth the kind of business contemplated, the location thereof, and praying that a license be granted them [him] therefor.

"Sec.    42.    The applicant shall accompany such petition with a bond in the penal sum of one thousand dollars, with good and sufficient sureties, to be approved by the city council, conditioned that the applicant will keep an orderly house and refrain from violating any ordinance or ordinances of said town now in force, or which may hereafter be enacted, for the regulation of the liquor traffic."    By an amendment to section 42,

it was further provided that such bond should be conditioned
"for the payment of the license provided for in section 43 of
Van Buren's Digest."

"Sec. 43. The license for engaging in the business speci-
fied in section 40 of this ordinance shall be the sum of six
hundred dollars per annum. But no license shall continue in
force longer than [to] the 31st day of December succeeding the
issuance of the same, nor shall a license be issued for any part
of the year for less than $600. Before issuing the license, the
applicant therefor shall pay $50, and such additional amount as
to leave only $50 for each succeeding month in the year, which
$50 installments, respectively, shall be paid on the first Monday
of each succeeding month, and a failure to pay any installment
when due shall work a forfeiture of the license of the person
failing to pay."

In the beginning of the year 1895, Winford made his
application, tendering his bond to the city council, and, without
further action, the same was referred back to him, with the
request to secure another good bondsman, and then present it
to W. T. Merrell, chairman of the council's finance committee,
for approval. Winford secured the name of M. W. Drewry as
such additional bondsman, and then presented the same to Mer-
rel, as directed by the council, and Merrell, desiring the approval
of Sibley, another member of the finance committee, directed it
to be presented to him also, all of which was done, and then
Merrell expressed his approval of the bond, and directed Crocket,
the recorder, to take it and issue the license thereon, which was
accordingly done, and Winford began business at once under
his license, and continued to carry it on, regularly paying the
monthly installments, as they fell due, until the first day of
June, when he voluntarily went out of business, and ceased to
make payments on his license tax, and at the end of the year
there remained unpaid seven installments, or the aggregate sum
of $350, for which sum this suit was brought.

The defendants, in their answer, denied the execution of
the bond, and that they owed the city of Van Buren anything.
In the course of the trial, plaintiffs offered to introduce in
evidence the bond sued on, to which the defendants objected,
admitting the signing of the bond, but alleging that it was incom-

plete and invalid, because it had not been approved by the city council, as the ordinance provided. The objection was sustained, over the exceptions of the plaintiffs; and they then offered to show by parol testimony of witnesses that when the bond was first presented to the council, it was referred back to Winford, with the request that he procure another good surety, and to present the bond so strengthened to W. T. Merrell, chairman of the council's finance committee, for his approval, all of which was done; and Merrill, without approving it at the time, simply requested Winford to present to Sibley, another member of the finance committee, saying he would like Sibley to be satisfied with it also, and then to return it to him, which was done; and Merrell then directed Crocket to file the bond, and issue the license, which was done; that subsequently (at the next council meeting, we infer) the matter was presented to the council by the recorder, explaining what had been done, and the council informally discussed the matter, but made no order concerning it, and took no further action in the premises. This was also objected to by defendants, and their objections to the admission of the parol testimony was sustained, and plaintiffs excepted, aud saved their exceptions. The court then rendered judgment for the defendants, in effect, because the bond had not been approved by the council, and the plaintiffs appealed.

The other objections on the part of defendants were not sustained by the court, but no cross appeal was taken by defendants, and the points are treated as having been abandoned.

The action of the council, if the statement of the proffered evidence be true, was tantamount to its approval of the bond, and there was only one thing lacking, and that was that its approval should be indorsed on the bond, and made part of the minutes of its proceedings. This, we think, brings the case within the rule announced in *Auditor* v. *Woodruff*, 2 Ark. 79, and for reasons assigned in that decision, it was error to exclude the bond and proffered testimony tending to show that it had been in fact approved, and for this error the judgment is reversed, with directions to proceed not inconsistently with this opinion.